UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
CASE NO. _____

| | | |
|---|---|---|
| **DENISE SHERIDAN** | : | |
| **506 Monterey Lane** | : | |
| **Cold Spring, KY 41076** | : | **Judge** |
|               **PLAINTIFF,** | : | _____ |
| **v.** | : | |
| | : | |
| **MEGGITT (ERLANGER), LLC** | : | |
| **d/b/a** | : | |
| **MEGGITT POLYMERS & COMPOSITES** | : | |
| **1400 Jamike Avenue** | : | **Magistrate Judge** |
| **Erlanger, KY 41048** | : | _____ |
| | : | |
| **SERVE:** | : | |
| **CT Corporation System** | : | |
| **306 West Main St., Ste. 512** | : | |
| **Frankfort, KY 40601** | : | |
| | : | |
| **and** | : | |
| | : | **COMPLAINT AND** |
| **MEGGITT-USA SERVICES, INC.** | : | **JURY DEMAND** |
| **1955 Surveyor Avenue** | : | |
| **Simi Valley, CA 93063** | : | |
| | : | |
| **SERVE:** | : | |
| **Office of the Secretary of State** | : | |
| **700 Capitol Avenue, Ste., 86** | : | |
| **Frankfort, KY 40601** | : | |
| | : | |
| **and** | : | |
| | : | |
| **EDAC COMPOSITES, LLC** | : | |
| **5 McKee Place** | : | |
| **Cheshire, CT 06410** | : | |
| | : | |
| **SERVE:** | : | |
| **Corporation Service Company** | : | |
| **421 West Main Street** | : | |
| **Frankfort, KY 40601** | : | |
|               **DEFENDANTS.** | : | |

Plaintiff, Denise Sheridan, for her causes of action against Defendants states as follows:

## NATURE OF ACTION

1. Plaintiff Denise Sheridan ("Sheridan") brings this action pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Kentucky Wage and Hour Act ("KWHA"), KRS § 337.010 *et seq.* against Defendants Meggitt (Erlanger), LLC, d/b/a Meggitt Polymers & Composites ("Meggitt Erlanger"), Meggitt-USA Services, Inc. ("Meggitt-USA"), and EDAC Composites, LLC ("EDAC") (collectively, "Defendants") for damages. Plaintiff seeks compensatory relief pursuant to the above referenced statutes as redress for injuries suffered by Plaintiff as a result of Defendants' intentional misclassification of Plaintiff, which resulted in the non-payment of rightfully earned overtime compensation.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under the laws of the United States. Plaintiff's Counts I and III arise under the Fair Labor Standards Act.

3. The Court is empowered to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367 on the grounds that they are so related to the federal claim, over which the Court has original jurisdiction, that they form part of the same case or controversy.

4. Venue in this District is appropriate because Defendants may be found here and because most or all of the events giving rise to the claims asserted herein occurred in this District.

## PARTIES

5. Plaintiff, Denise Sheridan, is a resident and citizen of Campbell County, Kentucky. At all relevant times, she was employed by Defendants until her termination effective September 21, 2018.

6. Defendant, Meggitt (Erlanger) LLC, d/b/a Meggitt Polymers & Composites (Meggitt Erlanger), is incorporated in Delaware, but transacts interstate business from its Erlanger, Kentucky location. At all times relevant hereto, Defendant Meggitt Erlanger was the employer of Plaintiff and is considered an employer for all purposes related to claims brought under 29 U.S.C. § 201 *et seq.* and KRS Chapter 337.

7. Defendant, Meggitt-USA Services, Inc., (Meggitt-USA) is incorporated in Delaware, but transacted interstate business from its Erlanger, Kentucky location. At all times relevant hereto, Defendant Meggitt-USA was also the employer of Plaintiff and is considered an employer for all purposes related to claims brought under 29 U.S.C. § 201 *et seq.* and KRS Chapter 337. Meggitt-USA is a foreign corporation who committed a violation of federal and state law in the Commonwealth of Kentucky but has failed to designate an agent for service of process. By operation of law, it has appointed the Secretary of State as authorized to accept service on its behalf and is subject to service and personal jurisdiction pursuant to KRS § 454.210(3).

8. Defendant, EDAC Composites, LLC, (EDAC) is incorporated in Delaware, but transacted interstate business from its Erlanger, Kentucky location. At all times relevant hereto, Defendant EDAC was also the employer of Plaintiff and is considered an employer for all purposes related to claims brought under 29 U.S.C. § 201 *et seq.* and KRS Chapter 337.

## STATEMENT OF THE CASE

9. Plaintiff Denise Sheridan was originally hired by Parkway Products, Inc. with the title of Human Resources Coordinator in June 2010. She was listed by Parkway Products as a salaried, professional exempt employee. Parkway is a predecessor corporation to the other Defendants.

10. In fact, in that position, Plaintiff exercised no independent discretion and performed duties that consisted entirely of administrative tasks, including issuance of timecards, distributing and reading pre-printed policies and procedures to new employees during onboarding, sending information to payroll, manual reporting of employee issues, performing initial phone screens, running pre-created reports when asked, reviewing headcount, reporting missed clock punches to supervisors, manning the receptionist desk when needed, completing assigned tasks from management, and miscellaneous manual office duties. Plaintiff supervised no employees at any relevant time.

11. In June 2013, Parkway Products was purchased by EDAC. Ms. Sheridan retained her position through the transaction and continued to perform the same administrative duties as listed in the previous paragraph. Despite that fact, and despite being non-exempt, Plaintiff was listed by EDAC as a salaried, professional exempt employee.

12. In December 2015, Meggitt-USA took over ownership and control of EDAC. Meggitt-USA continued to employ Ms. Sheridan in the same position with the same job duties as listed in Paragraph 10. Despite the fact that she continued to perform exclusively non-exempt administrative duties as described in Paragraph 10, Meggitt-USA listed and paid Ms. Sheridan as a salaried, professional exempt employee, although her duties described above should have been properly characterized as non-exempt in the FLSA.

13. Between December 27, 2015 and March 12, 2016, Ms. Sheridan received all of her paychecks from "Meggitt-USA Services Inc."

14. From March 13, 2016 until her termination, Ms. Sheridan received all of her paychecks from "Meggitt Erlanger, LLC." Despite the fact that she continued to perform exclusively non-exempt duties described in Paragraph 10, Meggitt Erlanger listed and paid her as a salaried, professional, exempt, Human Resources Coordinator.

15. From December 2015 to her termination, Ms. Sheridan reported to her local Human Resources Manager, Joseph Willig. Every aspect of Ms. Sheridan's position was subject to her manager's supervision, review, and approval. During her entire employment with Meggitt Erlanger and its predecessors, Plaintiff exercised no independent discretion and all of her actions were subject to the approval of Mr. Willig or one of the other supervisors. She continued to perform those duties described in paragraph 10 above until her termination.

16. In 2016, Jennifer Longstreth began to work at the Erlanger office in the position of Human Resources Manager with Joseph Willig. At that point, Ms. Sheridan reported to both Joseph Willig and Jennifer Longstreth. During this period, Plaintiff continued to exercise no independent discretion and all of her actions were subject to the approval of Mr. Willig, Ms. Longstreth, or one of the other supervisors. She continued to perform those duties described in paragraph 10 above.

17. From November of 2015 to her termination, Ms. Sheridan never exercised individual business discretion or independent business judgment with respect to any matters of significance.

18. From November of 2015 to her termination, Ms. Sheridan never supervised any other employees or had any direct reports.

19. From November of 2015 to her termination, Ms. Sheridan's job duties included issuance of timecards, distributing and reading pre-printed policies and procedures to new employees during onboarding, sending information to payroll, manual reporting of employee issues, performing initial phone screens, running pre-created reports when asked, reviewing headcount, reporting missed clock punches to supervisors, manning the receptionist desk when needed, completing assigned tasks from management, and miscellaneous manual office duties. Plaintiff supervised no employees at any relevant time.

20. From November of 2015 to her termination, Ms. Sheridan never made final hiring or firing decisions. Any input or recommendations she provided regarding hiring or firing were not determinative and had to be ultimately decided by supervisors, and/or Joseph Willig, and/or Jennifer Longstreth.

21. Ms. Sheridan always escalated employee disciplinary issues to the employee's supervisor. It was the employee's supervisor who made the decision to discipline his or her employee.

22. Ms. Sheridan was never involved in Senior Leadership Meetings.

23. On May 9, 2016, Meggitt Erlanger changed Ms. Sheridan's classification from a salaried, *professional* exempt employee to a salaried, *support* exempt employee, despite the fact that she continued to perform the same non-exempt, administrative duties described in Paragraphs 10 and 19 above, until her termination.

24. Meggitt Erlanger never notified Ms. Sheridan of the May 9, 2016 change in classification.

25. On July 14, 2016, Meggitt Erlanger listed Ms. Sheridan as "Administrative Support" and added that to Ms. Sheridan's EEO-1 Job Category.

26. Defendants continued to list Ms. Sheridan as a Human Resources Coordinator, but her job duties remained the same, consistent with Paragraphs 10 and 19. She was never notified of any changes in her status.

27. On September 28, 2016, Meggitt Erlanger again changed Ms. Sheridan's classification on its EEO-1 Job Category from "Administrative Support" to "Professionals."

28. Ms. Sheridan remained listed as a Human Resources Coordinator within the Company, but her job duties as described in Paragraphs 10 and 19 above remained the same. She was never notified of any changes in her status.

29. On September 25, 2017, Meggitt Erlanger again changed Ms. Sheridan's job classification from a *salaried, exempt* employee with a "Professionals" EEO-1 Job Category to a *salaried, non-exempt* employee with a "Professionals" EEO-1 Category.

30. On the same date, Meggitt Erlanger also changed Ms. Sheridan's job listing from a "Human Resources Coordinator" to a "Human Resources Representative." Her job duties remained the same throughout her employment.

31. Sometime during or after September 2017, Ms. Sheridan noticed these classification changes.

32. Ms. Sheridan asked her manager, Joseph Willig, to explain why, after years of performing the same job duties, working well over forty hours per week for most weeks she worked, and coming in on weekends, she was suddenly classified as non-exempt, but received no overtime pay.

33. In fact, Ms. Sheridan consistently worked more than forty hours per week for all weeks she worked for EDAC, Meggitt-USA, and Meggitt Erlanger, except in weeks she was on vacation or was ill. Her best recollection is that she worked on average approximately 8 to 9 hours per week overtime for which she was never compensated.

34. At no time was she ever paid for any hours worked in excess of forty hours per week.

35. Defendants ignored Ms. Sheridan's concerns.

36. In September 2017, Ms. Sheridan again asked her manager, Joseph Willig, to explain why she was not eligible for overtime. Ms. Sheridan later asked Jennifer Longstreth the same question.

37. Again, Defendants ignored Ms. Sheridan's concerns.

38. On September 19, 2018, two days before Ms. Sheridan's termination, Meggitt hired another employee to work in the Human Resources Department.

39. The new employee was hired as a "Human Resources Specialist," classified as hourly, non-exempt, and to Ms. Sheridan's knowledge, performed the same duties that Ms. Sheridan performed as described in Paragraphs 10 and 19 above.

40. The new employee was paid at an hourly rate and was eligible for overtime.

41. Meggitt instructed Ms. Sheridan to train the new employee in every aspect of Ms. Sheridan's job. Ms. Sheridan trained the new employee as instructed.

42. Within a few days prior to Ms. Sheridan's termination, Plaintiff again voiced concerns to Joseph Willig and Jennifer Longstreth, questioning why the new employee would be eligible for overtime, while Ms. Sheridan had not been and would not be, given that they performed the same duties.

43. Defendants again ignored Ms. Sheridan's concerns.

44. Two days later, Ms. Sheridan was terminated.

45. From November 2015 to her termination, Ms. Sheridan regularly worked well over forty hours per week and regularly came into work on weekends.

46. From November 2015 to her termination, Ms. Sheridan received no compensation for what was, on average, 8 to 9 hours worked in excess of forty hours per week, despite the fact that she always had performed duties of a non-exempt employee as described above.

47. From November 2015 to her termination, Ms. Sheridan's job classifications were intentionally manipulated multiple times, most without notice, and none with any explanation.

48. On information and belief, at all relevant times Meggitt-USA ultimately owned and controlled the business operations of Meggitt Erlanger and EDAC, including matters relating to hiring and firing Plaintiff and other employees of the joint Defendants. Meggitt-USA specifically directed Plaintiff and Meggitt Erlanger regarding the mandate that they improve hiring and retention practices. Thus, Defendants are considered joint employers for purposes of all claims asserted in this case.

49. Defendants' termination of Ms. Sheridan was motivated in substantial part by her complaints of failing to receive pay for overtime work and being improperly classified as an exempt employee.

50. Defendants' acts in misclassifying Plaintiff and failing to pay overtime were intentional, and Defendants knew or should have known that they were in violation of state and federal statutory mandates to pay overtime to employees who performed duties as were performed by Plaintiff.

## Count I

### Violation of the Fair Labor Standards Act

### 29 U.S.C. § 201 *et seq.*

51. Plaintiff incorporates all factual allegations set out above.

52. At no time did Plaintiff meet any of the exemptions defined under the Fair Labor Standards Act (FLSA). As such, she has always been a non-exempt employee.

53. At all relevant times, Defendants were employers as defined under the FLSA.

54. At all relevant times, Defendants willfully refused to pay Plaintiff appropriate overtime compensation for all hours worked by Plaintiff in excess of forty hours per work week.

55. Defendants' actions as described above constitute violations of the FLSA and are willful, wanton, and in reckless disregard of Plaintiff's rights.

56. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has been injured in the manner described above, all to her damage in an amount to be determined by the evidence at trial.

## Count II

### Violation of the Kentucky Wage and Hour Act

### Ky. Rev. Stat. Ann. § 337.010 *et seq.*

57. Plaintiff incorporates all factual allegations set out above.

58. The Kentucky Wage and Hour Act ("KWHA"), at KRS § 337.285(2)(c), adopts and applies the exemptions outlined in the FLSA.

59. Plaintiff does not meet any of the exemptions defined under the FLSA or KWHA. As such, she is a non-exempt employee for purposes of those Acts.

60. At all relevant times, Defendants were employers engaged in interstate commerce, and are otherwise employers as defined under the KWHA.

61. At all relevant times, Defendants willfully refused to pay Plaintiff appropriate overtime compensation for all hours worked by Plaintiff in excess of forty hours per work week.

62. Defendants' actions as described above constitute a violation of the KWHA and are willful, wanton, and in reckless disregard of Plaintiff's rights.

63. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has been injured in the manner described above, all to her damage in an amount to be determined by the evidence at trial.

## Count III

### Violation Fair Labor Standards Act: Retaliation

### 29 U.S.C. § 215

64. Plaintiff incorporates all factual allegations set out above.

65. Plaintiff engaged in protected activity by complaining of FLSA violations regarding her compensation for working over forty hours per week prior to her termination as described above.

66. At all relevant times, Plaintiff was a covered employee under the FLSA.

67. Defendants are employers engaged in interstate commerce, as defined under the FLSA.

68. Defendants conduct described above violated Plaintiff's rights protected by 29 U.S.C. § 215 by terminating Plaintiff because she asserted her rights to overtime compensation.

69. In response to Plaintiff exercising her FLSA rights, Defendants maliciously and willfully retaliated against Plaintiff by various acts, including but not limited to terminating Plaintiff's employment in retaliation for engaging in protected activity under the FLSA.

70. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has been injured in the manner described above, all to her damage in an amount to be determined by the evidence at trial.

## Count IV

### Violation of the Kentucky Wage and Hour Act: Retaliation

### Ky. Rev. Stat. Ann. § 446.070

71. Plaintiff incorporates all factual allegations set out above.

72. Plaintiff engaged in protected activity by complaining of state and federal law violations regarding her failing to be compensated for working over forty hours per week prior to her termination.

73. At all relevant times, Plaintiff was a covered employee under the KWHA.

74. Defendants are employers engaged in interstate commerce, and are otherwise employers as defined under the KWHA.

75. Defendants violated the KWHA by terminating Plaintiff because she asserted her rights to overtime compensation.

76. In response to Plaintiff exercising her KWHA rights, Defendants maliciously and willfully retaliated against Plaintiff by various acts, including but not limited to terminating Plaintiff's employment in retaliation for engaging in protected activity under the KWHA.

77. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has been injured in the manner described above, all to her damage in an amount to be determined by the evidence at trial.

**WHEREFORE,** Plaintiff Denise Sheridan demands judgment against Defendants EDAC Composites, LLC, Meggitt (Erlanger) LLC d/b/a Meggitt Polymers and Composites, and Meggitt-USA Services, Inc. as follows:

(a) That Plaintiff be awarded compensatory damages, including but not limited to her mental and emotional damages, as well as her unpaid overtime;

(b) That Plaintiff be awarded liquidated damages;

(c) That Plaintiff be rewarded reasonable attorney's costs and fees; and

(d) That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

/s/ Michael J. O'Hara
MICHAEL J. O'HARA (KY Bar No. 52530)
O'HARA, TAYLOR, SLOAN & CASSIDY
25 Town Center Boulevard, Suite 201
Covington, Kentucky  41017
mohara@oharataylor.com
(859) 331-2000
FAX: (859) 578-3365

**ATTORNEY FOR PLAINTIFF**

**JURY DEMAND**

Pursuant to Federal Rule 38, Plaintiff herewith demands that all issues of fact in the foregoing Complaint be tried to a jury.

/s/ Michael J. O'Hara
MICHAEL J. O'HARA
O'HARA, TAYLOR, SLOAN & CASSIDY